**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

Pulling Guard Productions, LLC d/b/a
The Arena League,

                                                    Case No.

                              Plaintiff,

vs.

Eau Claire Arena Football, LLC; ETO                **COMPLAINT**
Investments, LLC; Jeffrey Olson, and
Randi McVinnie,                                    **JURY TRIAL DEMANDED**
                              Defendants.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Pulling Guard Productions, LLC, d/b/a The Arena League ("TAL"), by

and through its undersigned attorneys, for its Complaint against Defendants Eau Claire

Arena Football, LLC ("ECAF"), ETO Investments, LLC ("ETO"), Jeffrey R. Olson

("Olson"), and Randi McVinnie ("McVinnie") (collectively, "Defendants"), states as

follows:

**NATURE OF THE ACTION**

1.      This is an action for breach of contract, piercing the corporate veil, breach

of the implied covenant of good faith and fair dealing, declaratory judgment, conversion,

unjust enrichment, and related claims arising from Defendants' systematic

mismanagement and mid-season abandonment of the Eau Claire arena football team

licensed to them by TAL under a Team Participation Agreement.

1

2.      Defendants entered into a binding Team Participation Agreement with TAL and were granted the right to operate the Eau Claire Axemen football team in The Arena League. From the outset, Defendants demonstrated an inability to meet their financial obligations. They failed to pay league dues on time, failed to fund equipment on time, terminated a valuable pre-existing sponsorship relationship for personal reasons, and required extraordinary accommodations from TAL and third-party lenders simply to field a team.

3.      In June 2025, after TAL had delivered four games of a completed season, Defendant Jeffrey Olson contacted TAL and confirmed in writing that Defendants could no longer sustain the financial operations of the team and sought to identify new ownership. That written communication constituted a voluntary withdrawal and breach under Section 2(e) of the TPA, triggering $150,000 in liquidated damages.

4.      TAL brings this action to enforce its contractual rights, recover its documented damages, and obtain a declaratory judgment confirming its authority over the Eau Claire team.

## PARTIES

5.      Plaintiff Pulling Guard Productions, LLC d/b/a The Arena League ("TAL") is an Iowa limited liability company with its principal place of business at 1500 David Street, Waterloo, Iowa 50703 (Business No. 800119). Its registered fictitious name is "The Arena League." The sole member of TAL is Jeff Holmes, a citizen of the State of Iowa.

2

6. TAL owns and operates a professional indoor football league called The Areana League, which uses a centralized licensing and governance structure in which TAL controls team participation rights, league intellectual property, and operational standards.

7. Defendant Eau Claire Arena Football, LLC ("ECAF") is a Wisconsin limited liability company with its principal place of business at 3732 Spooner Avenue, Altoona, Wisconsin 54720 (Entity ID E067001). ECAF was the licensed operator of the Eau Claire Axemen football team under the Team Participation Agreement.

8. Defendant ETO Investments, LLC ("ETO") is a Wisconsin limited liability company with its principal place of business at 603 Manor Court, Altoona, Wisconsin 54720 (Entity ID E065126). ETO was a co-obligor under the Team Participation Agreement.

9. Defendant Jeffrey Olson ("Olson") is an individual residing in the State of Wisconsin. Olson is the manager, controlling member, and registered agent of both ECAF and ETO. Olson personally signed the TPA on behalf of both entities, personally guaranteed the equipment loan, and exercised day-to-day operational control over the Eau Claire team at all times material hereto. Olson is sued individually and as alter ego of ECAF and ETO.

10. Defendant Randi McVinnie ("McVinnie") is an individual residing in the State of Wisconsin. McVinnie served as a principal and operational officer of ECAF and exercised significant day-to-day control over team operations, including but not limited to making the unilateral decision to terminate the Eau Claire Event District sponsorship

3

agreement, which caused substantial financial harm to the team. McVinnie is sued individually and as alter ego of ECAF.

11.    At all times relevant hereto, Olson and McVinnie exercised dominion and control over the operations, finances, and contractual obligations of ECAF and ETO. Olson and McVinnie used ECAF as their instrumentality to carry out their personal business objectives. ECAF was inadequately capitalized from its inception, as evidenced by its chronic inability to meet financial obligations, its need to seek emergency financing from Superior Choice Credit Union, and its ultimate inability to sustain operations through even a single complete season. Olson and McVinnie commingled their personal business interests with ECAF's operations, including the use of Olson's personal consulting firm email address for official team business and McVinnie's operation of her separate business, BONDS CoWork + Social Club, from the same address as ECAF (3732 Spooner Avenue, Altoona, WI 54720). To the extent necessary to prevent injustice, the corporate veil of ECAF and ETO should be pierced to hold Olson and McVinnie personally liable for the obligations asserted herein.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.    Plaintiff TAL is a citizen of the State of Iowa, which is the state of citizenship of its sole member, Jeff Holmes. Defendants ECAF, ETO, Olson, and

McVinnie are citizens of the State of Wisconsin. Complete diversity exists between Plaintiff and all Defendants.

14.     This Court has personal jurisdiction over Defendants because Defendants reside in this District, the contracts at issue were to be performed in this District, and the acts and omissions giving rise to Plaintiff's claims occurred within this District.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events giving rise to the claims occurred in Eau Claire County, Wisconsin, which is within the Western District of Wisconsin.

## FACTUAL ALLEGATIONS

### I.     The Arena League Structure and the Team Participation Agreement.

16.     Plaintiff TAL operates a professional indoor football league called The Arena League in which teams participate under league-issued licenses and contractual participation agreements. TAL controls team participation rights, league intellectual property, team branding, and operational standards. (Hereinafter, TAL shall refer to Plaintiff and the league it operates.)

17.     Participation in TAL requires execution of a Team Participation Agreement ("TPA") that governs the rights and obligations of a team licensee. The TPA requires team licensees to, among other things, timely fund league obligations, secure and maintain a suitable arena facility, properly report sponsorship and financial activity through TAL's designated platforms, and field a team for participation in each TAL season.

18.     On or about July 30, 2024, ECAF and ETO entered into the TPA with TAL for the right to operate a team within TAL in Eau Claire, Wisconsin. Olson signed the TPA on behalf of both ECAF and ETO and was the primary point of contact throughout the licensee relationship.

19.     Section 2(e) of the TPA provides that if a licensee fails to field a team for participation in a TAL season, such failure constitutes a material breach of the TPA. In the event of such breach, the licensee agrees to pay TAL liquidated damages in the amount of one hundred fifty thousand dollars ($150,000) to compensate TAL for consequential damages and administrative overhead. The TPA further provides that upon such breach, TAL shall revoke the license from the licensee and take over operations of the team and all material assets of the team.

20.     In consideration of the TPA and the rights granted thereunder, Defendants paid TAL $125,000 as a license fee.

**II.     Defendants' Destruction of Pre-Existing Sponsorship Revenue.**

21.     Prior to Defendants assuming control of the Eau Claire team, TAL had secured a partnership agreement with the Eau Claire Event District ("ECED") for the 2025 through 2027 seasons, under which the Eau Claire TAL team was to operate as the "Eau Claire Jammers." ECED committed to sponsorship valued at approximately $99,600 per season, of which approximately $34,000 had already been paid.

22.     Shortly after executing the TPA, Defendants unilaterally terminated the ECED sponsorship agreement. McVinnie had previously been employed by ECED and harbored personal animosity toward ECED's managing partner, Rock Eiden. Defendants'

6

termination of the ECED agreement was driven by McVinnie's personal conflict rather than any sound business rationale, and required repayment of the $34,000 previously advanced by ECED.

23.     On October 28, 2024, TAL and ECAF entered into an agreement, titled Nickname and Logo Release, in which TAL granted ECAF a release of "Jammers" branding and granting ECAF the right to use "Axeman" branding. The agreement specifically provided that TAL is the exclusive owner of the "Axemen" team nickname and logo and that ECAF was granted a license to use the "Axemen" intellectual property. TAL retained ownership of all team intellectual property including the name, logos, trademarks, and associated marks.

24.     On October 28, 2024, Defendants publicly announced that the team would instead operate as the "Eau Claire Axemen."

**III.   Chronic Financial Instability and Repeated Warnings.**

25.     From the earliest months of the licensee relationship, ECAF demonstrated severe and chronic financial instability. By late 2024, ECAF had failed to pay for game balls, turf, walls, dasher pads, and league dues. TAL, through Holmes, sent multiple written communications to Olson and McVinnie expressing concern about ECAF's financial health and warning that TAL would be required to exercise its rights under the TPA if ECAF could not fund operations.

26.     On January 28, 2025, TAL issued a formal ownership concern communication, offering Defendants an off-ramp. By February 1, 2025, ECAF could return the team to TAL with no further action and TAL would waive the $150,000

7

liquidated damages fee. If Defendants chose to proceed, the $150,000 fee would be enforced upon any subsequent failure to field or fund a team.

27.    On January 29, 2025, Defendant Olson responded in writing, stating: "We are going to push forward." Olson further stated that "[o]ne way or another," Defendants would get the funds necessary to purchase required equipment. Defendants expressly declined TAL's offered off-ramp and committed to proceeding under the TPA.

28.    On February 1, 2025, TAL confirmed receipt of Defendants' decision to proceed, notifying Defendants that they would operate under normal TPA terms and that the $150,000 liquidated damages provision would be enforced in the event of a subsequent failure to field a team.

29.    TAL, ECAF, and ETO subsequently executed a Securities Entitlement Control Agreement, dated February 5, 2025, with Superior Choice Credit Union ("SCCU"), pursuant to which Defendants pledged the TPA itself as security for a loan to fund the equipment purchase. Olson personally guaranteed the loan obligations.

**IV.    The Sonnentag Center License and ECAF's Failures**

30.    TAL had separately secured a license agreement with Centers LLC, the operator of the Sonnentag Center in Eau Claire, Wisconsin, for Defendants' use of the venue for TAL games during the 2025 season.

31.    Defendants failed to comply with the requirements of the Sonnentag license agreement, including but not limited to: (a) failing to pay a $10,000 deposit required under the agreement; (b) engaging in unauthorized ticket and parking sales outside the venue's approved ticketing system; (c) failing to submit a finalized game schedule and

game day operations plan; (d) using the branding of the Sonnentag Center and the University of Wisconsin–Eau Claire without authorization; and (e) scheduling the first game for May 24, 2025, outside the contractual license term which began no earlier than May 29, 2025.

32.    On May 20, 2025, Centers LLC issued a formal termination of the Event License Agreement, citing each of the foregoing failures by Defendants. Centers LLC further stated that it would not permit the May 24, 2025 game to proceed at the Sonnentag Center under any circumstances, regardless of whether a new or revised lease was entered into by TAL or ECAF/ETO.

33.    Defendants failed to respond to Centers LLC's termination letter or take any steps to remedy the deficiencies identified therein. Defendants had not informed TAL of the deficiencies at any time prior to the Termination Letter.

## V.    The 2025 Season and Defendants' Continuing Defaults

34.    The parties worked to resolve the license dispute ,and TAL facilitated the continuation of the 2025 season. Under Defendants' operation, the Eau Claire Axemen played four games: May 31, 2025 (away at Hot Springs, Arkansas); June 7, 2025 (home vs. Ozarks); June 14, 2025 (home vs. St. Joseph); and June 21, 2025 (home vs. Duluth). Following TAL's assumption of operations on June 25, 2025, the remaining schedule included games on June 28 (away at St. Joseph), July 12 (away at Duluth), July 18 (away at Iowa), and July 26 (home vs. St. Joseph).

35.    Throughout the 2025 season, Defendants continued to fail to meet their financial and operational obligations under the TPA, including failing to utilize TAL's

required sponsorship management platform (PandoPartner) and repeatedly requiring TAL to intervene to preserve team operations.

36. The financial strain caused by Defendants' chronic underfunding and mismanagement—including the loss of the ECED sponsorship, the costs of the Sonnentag Center dispute, and Defendants' failure to develop adequate independent revenue—was the direct and proximate cause of ECAF's inability to sustain operations. Compounding these failures, Defendants set ticket prices at rates substantially above market, which predictably resulted in poor attendance at Axemen home games.

### VI.   Defendants' Voluntary Withdrawal and TAL's Assumption of Operations

37. On June 23, 2025, Olson contacted Holmes by telephone to advise that ECAF could no longer financially support the team through the 2025 season. Olson requested support from TAL and identified prospective new owners for the team—a clear indication of Defendants' intent to withdraw from their obligations under the TPA.

38. The following day, June 24, 2025, Olson confirmed the substance of the June 23 conversation via email to Holmes, acknowledging Defendants' inability to sustain the Eau Claire Axemen financially.

39. Defendants' communications constituted a voluntary withdrawal from the 2025 TAL season and a material breach of the TPA under Section 2(e), triggering the $150,000 liquidated damages obligation.

40. On June 25, 2025, in response to Defendants' written withdrawal, TAL exercised its contractual right under the TPA to revoke Defendants' team license and

assume control of the Eau Claire Axemen operations to protect the team, the players under contract, the coaching staff, and TAL's obligations to its remaining schedule.

41.     As of June 25, 2025, Defendants had not complied with all obligations under the TPA. Defendants' failure to fund continued operations was an independent material breach, regardless of any prior disputes.

## VII.   TAL's Operational Costs and Defendants' Post-Exit Conduct

42.     Following TAL's assumption of team operations on or about July 18, 2025, TAL incurred substantial documented costs to preserve the team and honor its league commitments, including: (a) operational expenses of at least $54,924.03; (b) player transportation costs of $5,425.00; (c) player per diem costs of approximately $3,000.00; and (d) additional costs associated with fielding the team for games occurring after June 25, 2025. These costs were incurred solely because of Defendants' abandonment of the team and their failure to fulfil their obligations under the TPA.

43.     Following TAL's assumption, Defendants improperly interfered with team operations. Among other things, Defendants instructed players not to return team equipment to TAL and purportedly falsely represented to players that their workers' compensation insurance was no longer valid.

44.     On July 12, 2025, player Devaun Ford sustained an injury during team activities following TAL's assumption of operations. At the time of the injury, Defendants had not transitioned workers' compensation coverage, and TAL did not secure its own policy until July 18, 2025, exposing TAL to potential liability caused directly by Defendants' failure to coordinate an orderly transition.

11

45.    Defendants continued to use TAL's equipment—including turf, walls, and dasher pads purchased through the SCCU loan—without authorization after the revocation of their team license. TAL demanded return of all assets in writing. Defendants refused. TAL was ultimately able to retrieve the equipment on July 28, 2025, but it had diminished in value as a result of Defendants' unauthorized use.

46.    TAL presently retains the exclusive right to operate an arena football team in The Arena League in Eau Claire, Wisconsin, by virtue of Defendants' breach of the TPA and TAL's assumption of operations. Defendants have no right to operate, license, sell, or transfer any team in The Arena League in Eau Claire.

47.    Defendants have refused to cooperate with TAL in any orderly transition of team assets, intellectual property, or operational control, and have actively obstructed TAL's efforts to operate the Eau Claire team for the 2026 season.

## COUNT I – BREACH OF CONTRACT

(Against Defendants ECAF and ETO)

48.    Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

49.    The TPA constitutes a valid and enforceable contract between TAL and Defendants ECAF and ETO.

50.    Defendants ECAF and ETO materially breached the TPA by failing to field a team for the 2025 TAL season, as evidenced by Olson's June 24, 2025 email notifying TAL that ECAF could no longer sustain financial operations of the team.

51.     Defendants ECAF and ETO further materially breached the TPA by, among other things: (a) failing to timely fund league obligations, including equipment purchases and league dues; (b) failing to utilize TAL's required sponsorship management platform (PandoPartner); (c) engaging in conduct that caused the Sonnentag Center to terminate the license agreement; and (d) failing to maintain adequate financial resources to operate the team through even a single season.

52.     TAL has performed all obligations required of it under the TPA, or such performance has been waived or excused.

53.     As a direct and proximate result of Defendants' breaches, TAL has suffered damages including but not limited to: (a) liquidated damages of $150,000 as provided in Section 2(e) of the TPA; (b) operational expenses of at least $54,924.03 incurred in assuming team operations; (c) transportation costs of $5,425.00; (d) player per diem costs of approximately $3,000; and (e) attorneys' fees and costs incurred in connection with the breach and this action.

## COUNT II – PIERCING THE CORPORATE VEIL / ALTER EGO

(Against Defendants Olson and McVinnie)

54.     Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

55.     ECAF and ETO were at all relevant times the alter egos and instrumentalities of Olson and McVinnie. Olson and McVinnie exercised complete dominion and control over ECAF and ETO such that ECAF and ETO had no separate existence apart from Olson and McVinnie.

13

56.     Olson and McVinnie failed to adequately capitalize ECAF, as demonstrated by ECAF's inability to fund basic league obligations from inception, its need to obtain third-party financing from SCCU merely to purchase required playing surfaces, and its inability to sustain operations through a single season. Olson and McVinnie commingled their personal and business affairs, including operating multiple businesses from the same address and using personal email accounts for official team business.

57.     Observance of the corporate form of ECAF and ETO would sanction fraud or promote injustice. Defendants Olson and McVinnie are therefore personally liable for the obligations and damages owed to TAL as set forth herein.

## COUNT III – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

(Against Defendants ECAF and ETO)

58.     Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

59.     Every contract includes an implied covenant of good faith and fair dealing.

60.     Defendants ECAF and ETO breached the implied covenant of good faith and fair dealing by, among other things: (a) representing that they would fund the Eau Claire team while lacking the financial capacity to do so; (b) terminating the ECED sponsorship agreement for personal reasons unrelated to the business interests of the team; (c) failing to cooperate with TAL's operational requirements, including the PandoPartner platform; and (d) abandoning the team mid-season without adequate notice or cooperation in transitioning operations to TAL.

14

61.     As a direct and proximate result of Defendants' breach of the implied covenant, TAL has suffered damages in an amount to be proven at trial.

### COUNT IV – DECLARATORY JUDGMENT

(Against All Defendants)

62.     Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

63.     An actual, justiciable controversy exists between the parties regarding TAL's rights and Defendants' obligations under the TPA.

64.     Under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, TAL seeks a declaration that: (a) Defendants materially breached the TPA; (b) TAL properly revoked Defendants' team license per Section 2(e) of the TPA; (c) TAL is entitled to liquidated damages of $150,000 under the TPA; (d) TAL is the rightful owner of all Eau Claire Axemen intellectual property, including the team name, logos, and branding; and (e) Defendants remain responsible for all debts and obligations incurred during their period of ownership and control of the team.

### COUNT V – CONVERSION

(Against All Defendants)

65.     Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

66.     Under Section 2(e) of the TPA, upon revocation of the team license, TAL is entitled to possession and control of all material assets of the team, including equipment and fixtures paramount to operating a team in TAL.

67.     To the extent Defendants have retained, withheld, damaged, or interfered with TAL's rightful possession of team assets following the June 25, 2025 revocation— including but not limited to equipment, uniforms, playing surfaces, corporate records, social media accounts, and sponsorship documentation—such conduct constitutes conversion.

68.     TAL has been damaged as a result of Defendants' conversion in an amount to be proven at trial.

## COUNT VI – UNJUST ENRICHMENT

(Against All Defendants)

69.     Plaintiff incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

70.     In the alternative, and to the extent any agreement between the parties is found to be unenforceable, Defendants have been unjustly enriched by receiving the benefits of TAL's league infrastructure, intellectual property, operational support, venue arrangements, and equipment procurement without providing adequate compensation therefore.

71.     It would be inequitable for Defendants to retain these benefits without payment to TAL.

72.     TAL is entitled to restitution in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Pulling Guard Productions, LLC, d/b/a The Arena League, respectfully requests that this Court enter judgment in its favor and against Defendants, jointly and severally, as follows:

a. Awarding liquidated damages in the amount of $150,000.00 per Section 2(e) of the TPA;

b. Awarding compensatory damages for operational expenses, transportation costs, per diem costs, and other actual damages in an amount to be proven at trial, but not less than $63,349.03;

c. Entering a declaratory judgment confirming that: (i) Defendants materially breached the TPA; (ii) TAL properly revoked Defendants' team license; (iii) TAL is entitled to liquidated damages under the TPA; (iv) TAL owns all Eau Claire Axemen intellectual property; and (v) Defendants remain responsible for all pre-exit debts and obligations;

d. Awarding damages for conversion in an amount to be proven at trial;

e. In the alternative, awarding restitution for unjust enrichment;

f. Piercing the corporate veil of ECAF and ETO and holding Defendants Olson and McVinnie personally liable for all damages awarded herein;

g. Awarding attorneys' fees and costs as permitted by contract and applicable law;

h. Awarding pre-judgment and post-judgment interest at the highest rate permitted by law; and

i. Awarding such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.


**BEST & FLANAGAN LLP**


Dated: April 17, 2026                    */s/ John A. Sullivan*

John A. Sullivan (# 0396730)
Allison L. Dohnalek (*admission pending*)
60 South Sixth Street, Suite 2700
Minneapolis, MN 55402
(612) 339-7121
johnsullivan@bestlaw.com
adohnalek@bestlaw.com

***Attorneys for Plaintiff***